Ex parte Jeffrey Henry CALDWELL,
Applicant.

No. 25629–04.

Court of Criminal Appeals of Texas.

Aug. 28, 2000.

Nancy R. Vanderheider, White Bear Lake, Peter A. MacMillan, Minneapolis, for appellant.

Teresa Tolle, Asst. Dist. Atty., Dallas, for State.

PRICE, J., delivered the order of the Court in which McCORMICK, P.J., KELLER, HOLLAND, WOMACK, and KEASLER, J.J., joined.

The applicant claims that he is incompetent to be executed. The trial court found that the applicant did not make a substantial showing of incompetence, as required by Code of Criminal Procedure article 46.04, and therefore was not entitled to the appointment of experts or a competency hearing. After reviewing the statute and the documents submitted, we hold that we do not have the authority to review the trial court's decision to deny the applicant's request. The application is dismissed.

The applicant was convicted of capital murder on March 6, 1989. After the jury returned answers to the special issues, the trial court assessed punishment at death. We affirmed the applicant's conviction on direct appeal. *Caldwell v. State*, 818 S.W.2d 790 (Tex.Crim.App.1991). The trial court has scheduled the applicant's execution to take place on August 30, 2000.

After the trial court set the execution date, the State filed a request for psychiatric examinations and a determination of competency. In the request the State said that it does not believe that the applicant is incompetent to be executed. But the State requested that the trial court appoint two mental health experts to examine the applicant and determine his competency to be executed in light of the applicant's past claims in state and federal post-conviction proceedings [1] and an affidavit from a mental health professional in 1992.

The applicant did not oppose the State's motion but asked that the trial court not appoint Dr. James Grigson, Dr. John Rennebohm, or Dr. Clay Griffith. The applicant instead requested that the trial court appoint Dr. Mark Cunningham as one of the experts.

The trial court appointed Dr. Grigson and Dr. Michael Pittman. The applicant refused to cooperate with the doctors when they attempted to examine him.

The applicant then filed the instant application. The trial court noted that the applicant did not challenge his conviction and therefore relief was not appropriate under article 11.071. The trial court also said that the proper way to raise the claim of incompetence to be executed is in a motion under article 46.04. It went on to note that, to the extent the applicant's pleading could be interpreted as a motion under 46.04, the applicant failed to make a substantial showing of incompetence as required by the statute. The trial court ordered that the application and all accompanying documents be forwarded to this Court.

In the instant cause the applicant requests that we: (1) appoint and compensate counsel for preparation for a competency hearing, (2) remand the case to the trial court and direct the court to conduct a competency hearing, (3) grant funds so that the applicant may hire mental health experts, and (4) order the trial court to allow discovery in preparation for a competency hearing.

1. The applicant raised the issue of ineffective assistance of counsel in state and federal post-conviction proceedings. He claimed that his trial counsel was ineffective for failing to present mitigating evidence of mental illness during the punishment phase of the trial.

The Supreme Court has determined that it is unconstitutional to execute an insane person. *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986). The Supreme Court held that the execution of an insane person violates the Eighth Amendment prohibition against cruel and unusual punishment. *Id.* at 409–10, 106 S.Ct. 2595. In his plurality opinion [2] Justice Marshall said that the Court would leave to the states the task of developing appropriate ways to enforce the constitutional restriction. *Id.* at 416–17, 106 S.Ct. 2595. He also said that there may need to be a threshold showing on behalf of the prisoner to prevent nonmeritorious and repetitive claims of insanity. *Id.* at 417, 106 S.Ct. 2595.

The legislature codified the dictates of *Ford* by enacting article 46.04, which became effective September 1, 1999.[3] The

2. There was a five-vote majority for the holding that it is unconstitutional to execute a person who is insane. *Ford*, 477 U.S. at 409–10, 106 S.Ct. 2595. Only three other justices joined Parts III–V of Marshall's opinion. *Id.* at 410–17, 106 S.Ct. 2595.

3. Art. 46.04. Competency to be Executed

(a) A person who is incompetent to be executed may not be executed.

(b) The trial court retains jurisdiction over motions filed by or for a defendant under this article.

(c) A motion filed under this article must identify the proceeding in which the defendant was convicted, give the date of the final judgment, set forth the fact that an execution date has been set if the date has been set, and clearly set forth alleged facts in support of the assertion that the defendant is presently incompetent to be executed. The defendant shall attach affidavits, records, or other evidence supporting the defendant's allegations or shall state why those items are not attached. The defendant shall identify any previous proceedings in which the defendant challenged the defendant's competency in relation to the conviction and sentence in question, including any challenge to the defendant's competency to be executed, competency to stand trial, or sanity at the time of the offense. The motion must be verified by the oath of some person on the defendant's behalf.

(d) On receipt of a motion filed under this article, the trial court shall determine whether the defendant has raised a substantial doubt of the defendant's competency to be executed on the basis of:

(1) the motion, any attached documents, and any responsive pleadings; and

(2) if applicable, the presumption of competency under Subsection (e).

(e) If a defendant is determined to have previously filed a motion under this article, and has previously been determined to be competent to be executed, the previous adjudication creates a presumption of competency and the defendant is not entitled to a hearing on the subsequent motion filed under this article, unless the defendant makes a prima facie showing of a substantial change in circumstances sufficient to raise a significant question as to the defendant's competency to be executed at the time of filing the subsequent motion under this article.

(f) If the trial court determines that the defendant has made a substantial showing of incompetency, the court shall order at least two mental health experts to examine the defendant using the standard described by Subsection (h) to determine whether the defendant is incompetent to be executed.

(g) If the trial court does not determine that the defendant has made a substantial showing of incompetency, the court shall deny the motion.

(h) A defendant is incompetent to be executed if the defendant does not understand:

(1) that he or she is to be executed and that the execution is imminent; and

(2) the reason he or she is being executed.

(i) Mental health experts who examine a defendant under this article shall provide within a time ordered by the trial court copies of their reports to the attorney representing the state, the attorney representing the defendant, and the court.

(j) By filing a motion under this article, the defendant waives any claim of privilege with respect to, and consents to the release of, all mental health and medical records relevant to whether the defendant is incompetent to be executed.

(k) If, on the basis of reports provided under Subsection (i), the motion, any attached

article requires that the defendant file a motion to determine competency and sets out a laundry list of items that the motion must include.

■ Although the applicant labels his motion "Subsequent Application for Writ of Habeas Corpus and Motion for Appointment and Compensation of Counsel and Motion for Funding of Mental Health Experts," it is the substance of the motion that governs, not the title. The applicant makes clear that he is attempting to avail himself of the procedures in article 46.04. We will treat the applicant's pleading as a motion under article 46.04, just as the trial court did.

■ The applicant first claims that we should appoint and compensate his counsel to assist in fully developing his claim of incompetence and in preparing an amended subsequent application for habeas relief. There is no provision in article 46.04 for the appointment of counsel for preparation of a motion to determine competency. Although a trial court could appoint counsel in any given case, the trial court does not abuse its discretion by failing to do so in this context.

The applicant next claims that we should remand the cause to the trial court and order that a hearing be conducted. He also claims that we should grant funds to enable him to hire mental health experts in order to prepare for the competency hearing.

■ We do not have the authority under article 46.04 to do either. The determination of whether to appoint experts and conduct a hearing is within the discretion of the trial court. We cannot review the trial court's finding of a substantial showing of incompetence or, after a hearing takes place, the finding that the defendant is competent to be executed. Under the statute, this Court has authority only to review the trial court's finding that a defendant is incompetent. That occurs after the trial court makes a finding under article 46.04(k).

Article 46.04 provides that jurisdiction of the motion remains in the trial court and permits the Court of Criminal Appeals to review only a finding of incompetence. Under the statute, we have no other role in the process. Legislative history confirms this interpretation because the bill as introduced provided that a competency determination be requested by filing an application for a writ of habeas corpus under article 11.071.[4] A substitution was made in the House committee, creating the new article and giving the Court of Criminal Appeals the authority to review a finding of incompetence only.[5]

■ The applicant argues that the State and trial court acknowledged that the applicant has made a substantial showing by

documents, any responsive pleadings, and any evidence introduced in the final competency hearing, the trial court makes a finding by a preponderance of the evidence that the defendant is incompetent to be executed, the clerk shall send immediately to the court of criminal appeals in accordance with Section 8(d), Article 11.071, the appropriate documents for that court's determination of whether any existing execution date should be withdrawn and a stay of execution issued. If a stay of execution is issued by the court of criminal appeals, the trial court periodically shall order that the defendant be reexamined by men-

tal health experts to determine whether the defendant is no longer incompetent to be executed.

(*l*) If the trial court does not make the finding as described by Subsection (k), the court may set an execution date as otherwise provided by law.

4. H.B. 245, 76th Leg., R.S. (1999) (introduced), 1999 Tex. Gen. Laws 204.

5. H.B. 245, 76th Leg., R.S. (1999) (House Committee Report), 1999 Tex. Gen. Laws 1083.

the State's filing its request for experts and competency determination and the trial court's granting the request. We do not agree. The State clearly said in its request that it did not believe that the applicant was incompetent to be executed. The trial court said that the applicant failed to make a substantial showing under article 46.04(f).

Because we have no authority to grant the relief requested by the applicant, we must dismiss the application.

MEYERS, J., dissented.

JOHNSON, J., filed a dissent.

MANSFIELD, J., did not participate.

JOHNSON, J., dissenting from order dismissing application.

In article 46.04(a), the legislature set out the duty of the judicial system in regard to the execution of persons who assert that they are incompetent at the time of the scheduled execution: "A person who is incompetent to be executed may not be executed." The rest of the statute sets out procedures by which to effectuate that duty; it does not in any way negate or reduce the duty placed on the judicial system and this Court by article 46.04(a). Because the majority reads the rest of the statute to negate that duty in some circumstances, I dissent.

## I

The majority first finds that, "[a]lthough the trial court could appoint counsel in any given case, the trial court does not abuse its discretion by failing to do so...." *Ante* at 130. Using that logic, an applicant who is obviously incompetent to be executed can be executed, in direct violation of legislative intent as stated in article 46.04(a), merely because the trial court refused to appoint counsel to file the ap-

propriate motions. The existence of a right, statutory or constitutional, is meaningless without knowledge of the right and a means of asserting that right. If an applicant is, in fact, incompetent, filing the required motions *pro se* is an impossibility; the applicant will have neither the knowledge of the right nor the means to assert it. The absence of a provision in article 46.04 which explicitly deals with the appointment of counsel should not be read as negation of the constitutional right to counsel at critical stages of a criminal prosecution. Silence is not negation.

## II .

The holding of the majority that this Court may review only findings of incompetence is equally disturbing. In support, the majority points to the statute, which speaks explicitly of the procedures to be applied if the trial court makes a finding of incompetence, but is otherwise silent. Under the majority's logic, a trial court may insulate itself from review by this Court by the simple expedient of finding all applicants competent. Surely, the legislature would not want its stated intention of not executing incompetent persons to be so easily over-ridden. I would find that this Court does have authority to review a finding of competence. Silence is not prohibition.

The majority's holdings today effectively gut the provisions and intent of article 46.04. An incompetent applicant without the financial resources to hire an attorney and a psychiatric expert has protection from execution only on paper. We do violence to the statute and justice when we allow such a result. I therefore dissent.